***FOR PUBLICATION***

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re Daniel and Debbie Magee,

      Debtors.

Case No. 08-37600
Chapter 13

-------------------------------------------------------X

**MEMORANDUM DECISION
DENYING OBJECTION TO HOMESTEAD EXEMPTION**

Counsel:
Jeffrey Herzberg, Zinker & Herzberg
278 East Main Street, Suite C
PO Box 866
Smithtown, New York 11787
*Attorneys for Kamco Supply Corp.*

Marie Condoluci, *Of Counsel*
Simon Haysom LLC
One Railroad Ave.
Goshen, New York 10924
*Attorneys for Debtors*

      Judgment creditor Kamco Supply Corp. objects to Daniel Magee's ("Daniel") homestead exemption in the amount of $50,000, alleging that Daniel claimed the $10,000 exemption in his earlier bankruptcy case. Kamco argues that the earlier homestead exemption, which was for the legal amount in effect at the time, is res judicata in the present case, which was filed after New York increased its homestead exemption to $50,000. The Court overrules the objection. Daniel's first and second cases involve two distinct estates, and the present bankruptcy

estate and exemptions are governed by the law in effect at the time the present case was commenced, which allows a $50,000 exemption.

### *Statement of Jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### *Background*

Debtors commenced the present chapter 13 case on November 20, 2008, and confirmed a plan on January 19, 2010. Daniel is a repeat filer; he received the chapter 7 discharge on March 17, 2005.

In his previous, chapter 7 case, Case No. 04-37833, Daniel listed his residence in Monroe, New York, as having a market value of $235,000, subject to secured claims totaling $336,026.91. He exempted $10,000 in home equity, the legal amount of the New York homestead exemption at the time. On February 3, 2005, the chapter 7 trustee filed the following "no asset" report: "Trustee requests discharge and certifies under [Federal Rule of Bankruptcy Procedure] 5009: the estate has been fully administered; I have neither received nor distributed any non-exempt property; I have diligently inquired about the debtor(s) financial affairs and location of estate property. The estate has no nonexempt property to distribute." On the petition, Debtor referenced Kamco as a secured creditor, by listing a secured claim in the amount of $175,000 in favor of "Marshall, City of New York," with the annotation, "Judgment Creditor: Kamco Supply Corp vs Daniel Magee." Debtor did not move to avoid a judgment lien in the chapter 7 case.

In the schedules filed with their petition in the present, chapter 13 case, Debtors indicate that their residence in Monroe is worth $300,000, subject to a

secured claim of about $75,000, representing a home mortgage. Kamco is not listed in the schedules, or referenced in the confirmed chapter 13 plan.

On August 13, 2010, Kamco moved for relief from the stay, so that it could renew a judgment against the Debtors. The judgment was issued in January 2001 for the amount of $134,309.25, and was docketed in April 2001. With judgment interest, the present amount of the debt is estimated to be $291,704.76. The judgment lien will expire in 2011. The Court notes that the judgment appears to have been perfected before New York increased the homestead exemption to $50,000.

It appears that Daniel's personal liability on this debt was discharged in his previous, chapter 7 case. Joint-debtor Debbie allegedly remains liable for the debt, and the judgment lien has not been avoided. The parties appear to agree that the omission of Kamco from the schedules and list of creditors in the present case was an honest mistake on the part of the Debtors.

By Order entered on October 26, 2010, the Court denied Kamco's motion for relief from the stay. Debtor's motion to allow Kamco a late claim was granted on the record of the hearing held on October 19, 2010, and the Order allowing Kamco to file a claim was entered on November 24, 2010. Counsel to Kamco filed a proof of a secured claim in the amount of $258,412.98, with arrears of $124,103.25, the security being the judgment lien.

On October 28, 2010, counsel to Kamco objected to Daniel's homestead exemption, alleging that Daniel is not entitled to his $50,000 homestead exemption, because he took a $10,000 homestead exemption in his first bankruptcy case in 2004. Kamco argues that no party objected to the exemption, and therefore the exemption was allowed and granted. Kamco argues that Daniel's exemption must be limited to $10,000, based on res judicata.

Kamco does not object to Debbie's homestead exemption.

*Discussion*

The homestead exemption is established by a New York statute.  Daniel's homestead exemption is allowed in the amount of $50,000, because that is the amount of the homestead exemption in effect at the time the present case was commenced. The exemptions taken in a previous, chapter 7 case do not bind the current, chapter 13 case, because the cases are separate and unrelated legal events.

*Principles of res judicata*

> To determine whether the doctrine of res judicata bars a subsequent action, [courts] consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same. In the bankruptcy context, [courts] ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan.

*In re Layo*, 460 F.3d 289 (2d Cir. 2006) "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (Rehnquist, J.).  *See also Ljutica v. Holder*, 588 F.3d 119, 126 (2d Cir. N.Y. 2009) ("The doctrine of res judicata provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action"); *Johnson v. Potter*, 2010 U.S. App. LEXIS 20271 at *3 (2d Cir. Sept. 30, 2010) ("Res judicata bars relitigation of issues that were previously litigated by the same parties or their privies to a final judgment in a court of competent jurisdiction").

In *Moitie*, the district court dismissed the complaints of seven plaintiffs. *Moitie*, 452 U.S. at 395-396. All but two plaintiffs appealed. *Id.* at 396. The other two plaintiffs sued in state court; these actions were transferred to federal court and were dismissed, the court finding that the state-court complaints were similar to the complaints in the first district court action and were barred by res judicata. *Id.* at 369-397. Meanwhile, the group of five plaintiffs that had appealed the first federal ruling prevailed on their appeal, because a new Supreme Court opinion had been entered which might have affected their rights to relief. *Id.* at 397. The five plaintiffs had successfully appealed the district court's dismissal.

The two plaintiffs that had attempted suit in state court were not permitted to rejoin the five plaintiffs that prevailed on appeal. The Supreme Court found that they should not be allowed to benefit from the other parties' efforts on appeal – the other five plaintiffs had no interest in the duo's cases, and the duo had made a calculated choice to forgo their appeals. *Moitie*, 452 U.S. at 400-401. The Court rejected the circuit court's justification of "simple justice" and "public policy." *Id.* at 401. The dismissal of the first case was res judicata on the second case.

### *Principles of exemptions*

Upon the commencement of a bankruptcy case, an estate is created. 11 U.S.C. § 541(a). The estate is comprised of all the debtor's legal or equitable interests in property. § 541(a)(1). To facilitate the debtor's "fresh start" and to protect the debtor's dependents, the debtor may exempt certain property from the bankruptcy estate. New York has "opted out" of the federal scheme of exemptions, and New York debtors' exemptions are set out in N.Y. C.P.L.R. §§ 5205 (personal property) and 5206 (real property). "Because state law establishes the debtor's exemption, state law will also define the scope of that exemption." *In re Lubecki*, 332 B.R. 256, 258 (Bankr. W.D.N.Y. 2005). The debtor must file a list of the property claimed as exempt; unless a party in interest objects, the property claimed

as exempt on the list is exempt. Bankruptcy Code § 522(l). The debtor exempts the debtor's interest in the property, not the property *per se*. *Schwab v. Reilly*, 130 S. Ct. 2652, 2662, 2667 (2010) (Bankruptcy Code permits the debtor to withdraw from the estate certain interests in property, such as the car or home, up to certain values).

"Under [Bankruptcy] Code § 522(b), a debtor may be able to exempt property which allows the debtor to withdraw that property from property of the estate. This prevents the property from being used to pay debts through the bankruptcy case, as well as preventing most creditors from enforcing their claims through nonbankruptcy collection actions." *In re Little*, 2006 Bankr. LEXIS 1010, 6-7 (Bankr. N.D.N.Y. Apr. 24, 2006) (Gerling, Bankr. J.). <u>*Exemptions are determined according to the law in effect on the date of the filing of the petition*</u>. Bankruptcy Code § 522(b)(3)(A); *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991) (emphasis added). "Maximization of exemptions, especially the homestead exemption, is a fundamental policy of the Bankruptcy Code ..." *In re Ladd*, 450 F.3d 751 (8th Cir. 2006) (allowing debtors to amend homestead exemption fifteen months after trustee's objection to exemption was granted on default).

On August 30, 2005, New York increased the homestead exemption from $10,000 to $50,000. *See* 2005 N.Y. Laws Ch. 623; N.Y. C.P.L.R. § 5206. In *CFCU Community Credit Union v. Hayward*, 552 F.3d 253 (2d Cir. 2009), the Second Circuit held that the $50,000 homestead exemption applied to debts contracted prior to the effective date of the amendment, which increased the exempt amount from $10,000. In *Hayward*, the creditor argued that the amended N.Y. C.P.L.R. § 5206 did not specifically provide for retroactive applicability and therefore did not have retroactive applicability, and that the Contract Clause of the United States Constitution would be offended by such retroactive applicability. The Second

Circuit disagreed with the creditor and affirmed the decision of Bankruptcy Judge Ninfo, which principally relied upon *Little*, discussed herein.

In *Hayward*, the Second Circuit noted that the scope of the exemption – its applicability to debts contracted for before amendment as well as after amendment – was determined by New York law. *Hayward*, 552 F.3d at 259. The court noted the long history of homestead exemptions in New York, and stated, "The homestead exemption reflects a legislative policy, both state and federal, to provide an honest debtor with a fresh start, and was drafted with the understanding that justice is not served by leaving the debtor and his family homeless and on the brink of financial ruin." *Id.* at 260 (citing cases). The court noted that the amendment that had increased the exemption from $2,000 to $10,000 had expressly excluded applicability to debts contract for prior to the effective date of the amendment. *Id.* at 261. The current amendment did not contain such language; instead, it stated only that the amendment take effect "immediately." *Id.* The Second Circuit noted the rule that remedial statutes usually have retroactive applicability, and that the legislative history should be reviewed to determine whether the statute should be applied retroactively. *Id.* at 262. The court noted a "sense of urgency" in the legislative history of the increase to $50,000, and found that the amendment was remedial in nature. *Id.* at 264. In fact, the increased exemption might have been New York's attempt to abate the perceived hardship caused by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *Id.* at 265. Finally, the Court found that retroactive applicability did not violate the Contract Clause of the Constitution, holding that the impairment of the contract was not substantial because there has been a homestead exemption in New York since 1850, and the amount of the exemption has been increased several times. *Id.* at 268.

The courts in *Hayward* referenced *In re Little*, 2006 Bankr. LEXIS 1010 (Bankr. N.D.N.Y. Apr. 24, 2006), in which Judge Gerling presents a detailed

discussion of the construction of remedial statutes such as the act that increased the homestead exemption to $50,000. In *Little*, an unsecured creditor objected to the confirmation of the debtor's chapter 13 plan, seeking to limit the homestead exemption to $10,000, because the debt had been incurred before the exemption was raised to $50,000. The bankruptcy court noted that "remedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they do not impair vested rights." *Id.* at *34. "Remedial statutes are designed to correct imperfections in prior law by generally giving relief to the aggrieved party. *Id.* at *36. The court further noted the general rule that remedial statutes should be liberally construed to accord relief to the debtor. *Id.* at *36-*38 (citing cases). The court held that the homestead exemption was a remedial statute, and that retroactive applicability did not impair vested rights because the homestead exemption already existed – only the exempt amount changed. *Id.* at *36-*37, *40. The court allowed the debtor to use the increased exemption. *Id.* at *46. *See also In re Bartlett*, 24 B.R. 605, 608 (9th Cir. BAP 1982) (Elliot, J.) (in community property state, holding that spouses in different bankruptcy cases could each take their single homestead exemption, finding they had right to assert the exemption as many times as is necessary to protect the property from execution).

   The Court construes *Hayward* to apply to pre-amendment contract debts that were reduced to judgment. *See In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008) (holding that debtor could exempt $50,000, where judgment lien was perfected before homestead exemption was increased from $10,000 to $50,000); *Euber v. Sheldrick (In re Euber)*, 217 B.R. 448, 451, 452 (Bankr. D. Vt. 1998) (Conrad, Bankr. J.) (holding that debtors could take increased homestead exemption, even though judgment lien had been perfected before the exemption was increased).

### *Subsequent bankruptcy cases are distinct from each other*

In a chapter 7 case, the estate terminates when the case is closed, and the property of the estate reverts to the debtor. A trustee may abandon property of the estate that is burdensome or of inconsequential value. 11 U.S.C. § 554(a). When the trustee abandons property, title reverts to the debtor as if no bankruptcy had been filed. *Barletta v. Tedeschi*, 121 B.R. 669, 673 (N.D.N.Y. 1990). Property of the estate that is not administered at the time the case is closed is abandoned to the debtor. § 554(c). Title reverts to the debtor upon the closing of the case. *Barletta* at 674; *Fedotov v. Peter T. Roach and Assocs. PC* (354 F. Supp. 471, 475) (S.D.N.Y. 2005) (property that is not administered by the trustee reverts to the debtor's possession once the bankruptcy estate is fully administered and the bankruptcy case is closed). "The estate created in one bankruptcy case is distinct from that created upon the commencement of a subsequent case." *In re Jamesway Corp.*, 202 B.R. 697, 701 (Bankr. S.D.N.Y. 1996) (Garrity, Bankr. J.).

With these principles in mind, the Court turns to the narrow issue presented by Kamco's claims objection: Having availed himself of the $10,000 homestead exemption in his chapter 7 case, can Daniel now claim the $50,000 homestead exemption, which was the amount allowed at the time he commenced the chapter 13 case? Kamco argues that the use of the $10,000 exemption in the first bankruptcy case is res judicata. The Court disagrees, because Daniel's chapter 7 case is distinct from his present chapter 13 case, and his chapter 7 case was fully administered and closed. The cases involve different estates, different trustees, and different policies (chapter 7 liquidation compared with chapter 13 rehabilitation).

*In re Jamesway Corp.* is of guidance. The debtor filed a chapter 11 case, in which it assumed leases of non-residential real property. After the plan in the first case was substantially consummated and while the case was still pending, the debtor commenced a second chapter 11 case, and rejected some of the leases that it

Page 9 of 14

had assumed in the first case. The bankruptcy court denied the landlords a high-priority administrative claim for the lease damages in second case, holding that the cases involved two different debtors and two different estates. The court rejected the landlords' argument that the first case was res judicata in the second case. The landlords argued res judicata because they wanted their claim for the rents to be paid in full as administrative claims in the second case, and the court found that the debtor was not bound by its first case and could treat the lease damages as low-priority general unsecured claims. The court noted that in a chapter 11 case, property of the estate vests in the debtor upon confirmation of the plan. *Jamesway*, 202 B.R. at 701. The court interpreted the term "debtor" to refer to the debtor in the case under consideration, not a debtor in a different case. *Id.* The subsequent bankruptcy case was a case distinct from the first, with an estate distinct from the first. *Id.* at 704 (citing *In re Jartran*, 886 F.2d 859 (7th Cir. 1989)). The court rejected the landlords' argument that the assumption of the leases in the first case was res judicata in the second case, because the cases were distinct cases involving different debtors. *Jamesway*, 202 B.R. at 705.

In *Jamesway*, the bankruptcy court cited *In re Larsen*, 59 F.3d 783 (8th Cir. 1995) for the rule that a bankruptcy case is distinct from a subsequent case. In *Larsen*, the debtors filed cases under chapter 11, 12 and 13, all of which where dismissed. The bankruptcy court had approved the fees in the chapter 11 and 12 cases as administrative claims; in fact, the chapter 11 fees were given administrative priority in the chapter 12 case. In the final, chapter 7 case, the appellate court denied administrative status for attorney fees that were incurred in the debtors' chapter 11 and 12 cases. The court noted that the chapter 7 estate was not created until the chapter 7 petition was filed. Significantly, the court noted, "When a single bankruptcy case is converted from a reorganization proceeding to a Chapter 7 liquidation, there is good reason to assume that all administrative

expenses allowed under § 330 are entitled to at least some priority for benefitting the ultimate estate. That assumption is far less appropriate when dealing with administrative expense claims *carried over to a second, distinct bankruptcy case*." *Larsen*. The court found that for treatment as administrative claims, the fees would have to have been associated with the current case – approved after notice in the current case, actually necessary for the current case, and for the benefit of the current case. *See In re Larsen*, 59 F.3d at 787.

### *Chapter 13 compared with chapter 7 bankruptcy*

In *Jamesway* and *Larsen*, the courts considered whether claims should be afforded the high status on account of actions in previous cases. *See Jamesway*, 202 B.R. at 704 (discussing *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir. 1989)); *Larsen*, 59 F.3d 783, 786-787 ("Extending administrative expense priority to claims awarded in a different bankruptcy case furthers neither the purpose of preserving the Chapter 7 estate nor the overarching objective of creditor equality"). The parties sought to enforce rights that had been granted by the bankruptcy courts in earlier cases, in subsequent, distinct bankruptcy cases. Similarly, the Court must decide in the matter at bar whether an exemption asserted in a previous bankruptcy case must carry over into the subsequent case. The Court, guided by *Jamesway* and *Larsen*, concludes that the exemption from Daniel's chapter 7 case does not apply in the present, chapter 13 case, because the chapter 13 case is a separate and entirely different legal event from the chapter 7 case.

Chapter 7 and chapter 13 bankruptcy cases are dramatically different. Chapter 7 bankruptcy is concerned with liquidation. In chapter 7, the debtor must turn over to the trustee nonexempt assets acquired pre-petition, and the debtor may keep property acquired after the case is commenced. *See* 11 U.S.C. §§ 521(a)(3) (turnover of property of the estate), 541 (property of the estate includes property acquired by the debtor "as of" the petition date). The chapter 7 trustee liquidates

the debtor's nonexempt pre-petition property, converting it to cash to be distributed among the debtor's creditors in a statutory scheme of priorities. *See* 11 U.S.C. §§ 704(a)(1), 507. The chapter 7 debtor does not have many responsibilities post-petition, other than to cooperate with the trustee and obey court orders. *See* § 727(a) (discharge), 521(a)(3).

In contrast, the objective of chapter 13 bankruptcy is to rehabilitate the debtor. The chapter 13 debtor retains a significant amount of control over property of the estate, remaining in possession of the property of the estate. § 1306(b). The chapter 13 debtor may use property of the estate outside the ordinary course, such as by refinancing a mortgage or pursuing a lawsuit. *See* § 1303. The chapter 13 debtor may avoid judgment liens and "strip" unsecured second mortgages, whereas the chapter 7 debtor may only avoid judgment liens. *See* 11 U.S.C. § 522(f); *In re Pond*, 252 F.3d 122 (2nd Cir. 2001). Most significantly, the chapter 13 debtor commits to a 36- or 60-month plan, depending on income, in which creditors are repaid using post-petition income.

The chapter 13 plan is a complicated legal device designed to rehabilitate the debtor, by requiring the debtor to repay creditors to the best of the debtor's ability. First, the debtor generally pays creditors with post-petition wages, which are included as property of the estate of the chapter 13 debtor. 11 U.S.C. § 1306(a)(2). Creditors must receive more in the chapter 13 plan than they would in a chapter 7 liquidation, which requires the debtor to pay the value of nonexempt property into the plan, plus a bit extra. *See* § 1325(a)(4). Creditors have the right to object to the plan. *See* § 1325(b). A confirmed plan is res judicata as to all issues that were or could have been decided during the confirmation process. *Layo*, 460 F.3d at 293; 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the

plan"); *In re Chappell*, 984 F.2d 775 (7th Cir. 1993) (secured creditor was not entitled to interest, because plan bound the debtor and creditor).

The Court holds that Daniel Magee may claim the homestead exemption in the present, chapter 13 case in the amount of $50,000. As noted above, exemptions are determined as of the filing date of the case. In a chapter 7 case, property of the estate vests in the debtor when the fully administered case is closed. Daniel's chapter 7 case was fully administered and was closed. His interest in the property of the estate vested in him; the estate terminated. More than three years later, he commenced a chapter 13 case with his wife as a joint debtor. The chapter 13 case is a legal event separate and distinct from the earlier chapter 7 case: the automatic stay takes effect, a new trustee is appointed, and the debtor has different powers and obligations in chapter 13 than chapter 7. The Court, the Debtors, the chapter 13 trustee and the other creditors relied on the homestead exemptions of $50,000 in developing and confirming the plan. Kamco characterizes the chapter 7 exemption as res judicata in the present case, but given the chapter 13 debtor's greater powers and responsibilities with respect to the property of the estate, the exemptions and administration of a previous chapter 7 case simply have no relevance with respect to the exemptions and administration of a subsequent chapter 13 case.

The Court notes that the provisions of the Bankruptcy Code that concern exemptions make no qualifications for repeat filers, and if the drafters of the statute had intended such a limitation, then it was well within their capabilities to provide it. For example, Bankruptcy Code § 362(c)(3) and (4) provides that the effect of the automatic stay may be limited in the cases of repeat filers. There is no similar provision in the Code addressing exemptions in the context of a subsequent case.

Kamco relies on *In re Erickson*, 406 B.R. 522 (Bankr. W.D. Mich. 2009), in which the court discussed the effect of the debtors' initially exempting real property upon their attempt to exempt tax refunds. This decision is not helpful or

persuasive to the Court, because in the matter at bar, the Court considers a question of exemptions in two distinct bankruptcy cases. The question is not whether Daniel may alter his exemption during the pendency of a single case, but whether the exemption in the earlier case has any binding effect on the current case. The Court holds that it does not.

For the foregoing reasons, Kamco's objection to Daniel's homestead exemption is DENIED. Counsel to Daniel shall submit an order.

Dated: February 3, 2011
Poughkeepsie, NY

/s/ Cecelia Morris
U.S. Bankruptcy Judge, SDNY